CASE NO. _____

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

IN RE JAMES D. ESSEKS, CARL CHARLES, LATISHA FAULKS,
MILO INGLEHART, AND KATHLEEN HARTNETT,

*Petitioners.*

v.

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
ALABAMA,

*Respondent.*

BRIANNA BOE, MEGAN POE, ALLISON POE, KATHY NOE,
CHRISTOPHER NOE, RACHEL KOE, REBECCA ROE, *individually and on
behalf of* MELISSA ROE, HEATHER AUSTIN, ROBERT MOE, AND APRIL
MOE,

*Real Parties in Interest-Plaintiffs.*

UNITED STATES OF AMERICA,

*Real Party in Interest-Intervenor-Plaintiff.*

STEVE MARSHALL, DARYL D. BAILEY, JESSICA VENTIERE, DANNY
CARR, CHAMP CROCKER, AND JAMES H. TARBOX,

*Real Party in Interest-Defendants.*

---

On Petition for a Writ of Mandamus from the United States District
Court for the Middle District of Alabama, Northern Division
No. 2:22-cv-00184-LCB-CWB

---

# PETITION FOR A WRIT OF MANDAMUS AND
# EMERGENCY MOTION FOR STAY
# (RELIEF NEEDED BY 5:30 P.M EASTERN TIME, MAY 20, 2024)

---

W. Neil Eggleston
Byron Pacheco
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
P: (202) 202-389-5000
F: (202) 389-5200
Neil.Eggleston@kirkland.com
*Counsel for Esseks, Charles, Faulks, and
Inglehart*

Barry A. Ragsdale
Robert S. Vance III
DOMINICK FELD HYDE, P.C.
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
P:  (205) 536-8888
bragsdale@dfhlaw.com
*Counsel for Esseks, Charles, Faulks, and
Inglehart*

Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, D.C. 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com
*Counsel for all Petitioners*

Brannon J. Buck
Christopher B. Driver
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
P: (205) 521-0036
F: (205) 521-0037
bbuck@badhambuck.com
*Counsel for Hartnett*

*In re James D. Esseks, et al. v. United States District Court for the Middle District of Alabama, et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, counsel certifies that the following persons and entities may have an interest in the outcome of this case:

1. Academic Pediatric Association, Amicus in *Boe*;

2. Adair, Robert Brett, Adair Law Firm, LLC, counsel for non-party movant in *Boe*;

3. Aderholt, Caroline M., Amicus in *Boe*;

4. Aderholt, Robert B., Amicus in *Boe*;

5. Advancing American Freedom, Inc., Amicus in *Boe*;

6. Agricola, Algert Swanson, Agricola Law, counsel for Amicus in *Boe*;

7. Alabama Center for Law and Liberty, Amicus in *Boe*;

8. Alabama Chapter of the American Academy of Pediatrics, Amicus in *Boe*;

9. Alabama Citizen's Action Program, Non-Party Movant in *Boe*;

10. American Academy of Child and Adolescent Psychiatry, Amicus in *Boe*;

11. American Academy of Family Physicians, Amicus in *Boe*;

12. American Academy of Nursing, Amicus in *Boe*;

13. American Academy of Pediatrics, Amicus in *Boe*;

14. American Association of Physicians for Human Rights, Inc., d/b/a GLMA:

Health Professionals Advancing LGBTQ Equality, Amicus in *Boe*;;

15. America First Legal Foundation, Amicus in *Boe*;

16. American Civil Liberties Union Foundation;

17. American Civil Liberties Union of Alabama Foundation;

18. American College of Obstetricians and Gynecologists, Amicus in *Boe*;

19. American College of Osteopathic Pediatricians, Amicus in *Boe*;

20. American College of Physicians, Amicus in *Boe*;

21. American Family Association, Inc., Amicus in *Boe*;

22. American Medical Association, Amicus in *Boe*;

23. American Pediatric Society, Amicus in *Boe*;

24. American Psychiatric Association, Amicus in *Boe*;

25. Americans United for Life, Amicus in *Boe*;

26. Association of American Medical Colleges, Amicus in *Boe*;

27. Association of Medical School Pediatric Department Chairs, Amicus in *Boe*;

28. Austin, Heather, Plaintiff in *Boe*;

29. Baia, Elizabeth, Covington & Burlin, LLP, counsel for Amicus in *Boe;*

30. Bailey, Daryl D., Defendant in *Boe*;

31. Bainbridge Mims Rogers & Smith, LLP, Counsel for *Ladinsky* Counsel;

32. Balkoski, Katherine, Farella Braun & Martel LLP, Counsel for *Ladinsky* Counsel;

33. Barr, Andrew Daniel, *Walker* Counsel;

34. Barnes, Brian, defense counsel in *Boe*;

35. Beaverstock, Jeffrey Uhlman, U.S. Judge for the Southern District of Alabama;

36. Boe, Brianna, Plaintiff in *Boe*;

37. Bokhan, Kristen, of Kirkland & Ellis LLP, Counsel for Petitioners;

38. Borelli, Tara Lynn, *Walker* Counsel;

39. Bowdre, Alexander, defense counsel in *Boe*;

40. Brooks, Mo, Amicus in *Boe*;

41. Brooks, Roger, defense counsel in *Boe*;

42. Broyles, Vernadette, defense counsel in *Boe*;

43. Brown, Chip, Amicus in *Boe*;

44. Buck, Brannon Jeffrey, Badham and Buck, LLC, counsel for Kathleen Hartnett;

45. Burke, Liles C., U.S. Judge for the Northern District of Alabama;

46. Cantrell, Michael A., Office of the Arkansas Attorney General, counsel for Amicus in *Boe*;

47. Capone, Russell, of Cooley LLP, Counsel for *Walker* Counsel;

48. Cardinal Institute for West Virginia Policy, Amicus in *Boe*;

49. Carl, Jerry L., Amicus in *Boe*;

50. Carr, Danny, Defendant in *Boe*;

51. Center for Arizona Policy, Amicus in *Boe*;

52. Center for Family and Human Rights, Amicus in *Boe*;

53. Charles, Carl Solomon, Petitioner and *Walker* Counsel;

54. Citizens United, Amicus in *Boe*;

55. Citizens United Foundation, Amicus in *Boe*;

56. Cooley LLP, Counsel for *Walker* Counsel;

57. Concerned Women for America, Amicus in *Boe*;

58. Copeland Franco Screws & Gill, P.A., Counsel for *Ladinsky* Counsel;

59. Crocker, Champ, Defendant in *Boe*;

60. Davis, James, defense counsel in *Boe*;

61. Dominick Feld Hyde, P.C., Counsel for Petitioners;

62. Doss, Jeffrey P., *Ladinsky* Counsel;

63. Driver, Christopher B., Badham and Buck, LLC, counsel for Kathleen Hartnett;

64. Eagan, Melody H., *Ladinsky* Counsel;

65. Eagle Forum of Alabama, Non-Party Movant in *Boe*;

66. Eggleston, Warren Neil, of Kirkland & Ellis LLP, Counsel for James Esseks, Carl Charles, and LaTisha Faulks;

67. Egyes, Lynly Serena, *Walker* Counsel;

68. Elliot, T. Christopher, Amicus in *Boe*;

69. Esseks, James D., Petitioner and *Walker* Counsel;

70. Faith & Freedom Coalition, Amicus in *Boe*;

71. Faulks, LaTisha Gotell, Petitioner and *Walker* Counsel;

72. Foundation for Moral Law, Amicus in *Boe*;

73. Frampton, Henry, defense counsel in *Boe*;

74. Franklin, Samuel Holley, of Lightfoot Franklin & White LLC, Counsel for *Ladinsky* Counsel;

75. Free Speech Coalition, Amicus in *Boe*;

76. Frontline Policy Council, Amicus in *Boe*;

77. Gardner, Christopher J., The Hilbert Law firm, LLC, counsel for Amicus in *Boe*;

78. GLBTQ Legal Advocates & Defenders;

79. Goldberg, Noah Shea, Covington & Burlin, LLP, counsel for Amicus in *Boe*;

80. Graham, John Mark, Phelps Dunbar, LLP, counsel for Amicus in *Boe*;

81. Gray, C. Boyden, Boyden Gray & Associates, counsel for Amicus in *Boe*;

82. Hartnett, Kathleen Roberta, Petitioner and *Walker* Counsel;

83. Helstrom, Zoe Wynne, *Walker* Counsel;

84. Hilbert, Kurt R., The Hilbert Law firm, LLC, counsel for Amicus in *Boe*;

85. Holliday, Shannon L., Copeland Franco Screws & Gill, PA, Counsel for

*Ladinsky* Counsel;

86. Human Rights Campaign Foundation;

87. Independent Women's Forum, Amicus in *Boe*;

88. Inglehart, Milo Rohr, Petitioner and *Walker* Counsel;

89. Isasi, William, Covington & Burlin, LLP, counsel for Amicus in *Boe*;

90. Jauregui, Phillip Leo, Jauregui, LLC, counsel for Amicus in *Boe*;

91. John Locke Foundation, Amicus in *Boe*;

92. Johnston, Alan Eric, Attorney at Law, counsel for non-party movant in *Boe*;

93. Jordan, Albert Linch, Wallace Jordan Ratliff & Brandt LLC, counsel for Amicus in *Boe*;

94. Judicial Watch, Inc., Amicus in *Boe*;

95. Kang, Katelyn, *Walker* Counsel;

96. Katz, Adam Menke, *Walker* Counsel;

97. King & Spalding LLP, *Ladinsky* Counsel;

98. King, Mark Christian, of Lightfoot Franklin & White LLC, Counsel for *Ladinsky* Counsel;

99. Kirkland & Ellis LLP, Counsel for Petitioners;

100. Koe, Rachel, Plaintiff in *Boe*;

101. Kutcher, Matthew L., of Cooley LLP, Counsel for *Walker* Counsel;

102. LaCour, Edmund, defense counsel in *Boe*;

103.    Lambda Legal;

104.    Lannin, Cortlin Hall, Covington & Burlin, LLP, counsel for Amicus in
        *Boe*;

105.    Lanosa, Michael J., Covington & Burlin, LLP, counsel for Amicus in
        *Boe*;

106.    Lee, Bethany, defense counsel in *Boe*;

107.    Levi, Jennifer L., *Ladinsky* Counsel;

108.    Lightfoot Franklin & White LLC, Counsel for *Ladinsky* Counsel;

109.    Louisiana Family Forum, Amicus in *Boe*;

110.    Madden, Wendy, *amici* counsel in *Boe*;

111.    Manhattan Institute, Amicus in *Boe*;

112.    Marshall, Steve, Defendant in *Boe*;

113.    Mauldin, Dylan, defense counsel in *Boe*;

114.    McCotter, Trent R., Boyden Gray & Associates, counsel for Amicus in
        *Boe*;

115.    McKay, Charles, defense counsel in *Boe*;

116.    McCoy, Scott D., *Ladinsky* Counsel;

117.    Melchert, Dale, *Walker* Counsel;

118.    Mendenhall, Allen, Amicus in *Boe*;

119.    Michigan Family Forum, Amicus in *Boe*;

120.       Mills, Christopher, defense counsel in *Boe*;

121.       Minter, Shannon, *Ladinsky* Counsel;

122.       Moe, April, Plaintiff in *Boe*;

123.       Moe, Robert, Plaintiff in *Boe*;

124.       Mooney, Arnold, Amicus in *Boe*;

125.       Moore, Barry, Amicus in *Boe*;

126.       Mor, Yuval, Covington & Burlin, LLP, counsel for Amicus in *Boe*;

127.       Mountain States Legal Foundation, Amicus in *Boe*;

128.       Munger, Tolles & Olson LLP, Counsel for Petitioners;

129.       National Association of Pediatric Nurse Practitioners, Amicus in *Boe*;

130.       National Center for Lesbian Rights;

131.       National Republican Redistricting Trust, Amicus in *Boe*;

132.       Noe, Christopher, Plaintiff in *Boe*;

133.       Noe, Kathy, Plaintiff in *Boe*;

134.       Nowlin-Sohl, Lisa, *Walker* Counsel;

135.       Oklahoma Council of Public Affairs, Amicus in *Boe*;

136.       Oladeinbo, Gilbert, *Ladinsky* Counsel;

137.       Olson, William J., William J. Olson, PC, counsel for Amicus in *Boe*;

138.       Orr, Asaf, *Ladinsky* Counsel;

139.       Otterberg, April A., Jenner & Block, LLP, Counsel for *Ladinsky*

Counsel;

140. Pacheco, Byron, of Kirkland & Ellis LLP, Counsel for James Esseks, Carl Charles, and LaTisha Faulks;

141. Palmer, Gary, Amicus in *Boe*;

142. Parental Rights Foundation, Amicus in *Boe*;

143. Patterson, Peter, defense counsel in *Boe*;

144. Pediatric Endocrine Society, Amicus in *Boe*;

145. Pelet Del Toro, Valeria Marie, *Walker* Counsel;

146. Pennsylvania Family Council, Amicus in *Boe*;

147. Peterson, Misty L., *Ladinsky* Counsel;

148. Picasso, Malita Vencienzo, *Walker* Counsel;

149. Poe, Allison, Plaintiff in *Boe*;

150. Poe, Megan, Plaintiff in *Boe*;

151. Prater, Harlan I., Lightfoot Franklin & White LLC, Counsel for *Ladinsky* Counsel;

152. Pratt, J. Andrew, *Ladinsky* Counsel;

153. Private Citizen, Amicus in *Boe*;

154. Proctor, R. David, U.S. Judge for the Northern District of Alabama;

155. Protect Our Kids, Amicus in *Boe*;

156. Public Interest Legal Foundation, Amicus in *Boe*;

157.    Ragsdale, Barry Alan, of Dominick Feld Hyde, P.C., Counsel for James Esseks, Carl Charles, and LaTisha Faulks;

158.    Ramer, John, defense counsel in *Boe*;

159.    Ray, Brent P., *Ladinsky* Counsel;

160.    Reinhardt, Elizabeth Fri, *Walker* Counsel;

161.    Reinke, Adam, *Ladinsky* Counsel;

162.    Roe, Melissa, Plaintiff in *Boe*;

163.    Roe, Rebecca, Plaintiff in *Boe*;

164.    Rogers, Bruce Frederick, of Bainbridge Mims Rogers & Smith, LLP, Counsel for *Ladinsky* Counsel;

165.    Rogers, Mike, Amicus in *Boe*;

166.    Saldana, Robby L.R., *Walker* Counsel;

167.    Schoenberg, Anthony Paul, Farella Braun & Martel LLP, Counsel for *Ladinsky* Counsel;

168.    Sechler, Philip, defense counsel in *Boe*;

169.    Segall, Robert David, of Copeland Franco Screws & Gill, Counsel for *Ladinsky* Counsel;

170.    Seiss, Benjamin, defense counsel in *Boe*;

171.    Shortnacy, Michael B., *Ladinsky* Counsel;

172.    Silva, Dylan M., Covington & Burlin, LLP, counsel for Amicus in *Boe*;

173.     Simpson, Matt, Amicus in *Boe*;

174.     Society for Adolescent Health and Medicine, Amicus in *Boe*;

175.     Society for Pediatric Research, Amicus in *Boe*;

176.     Society for Pediatric Urology, Amicus in *Boe*;

177.     Society of Pediatric Nurses, Amicus in *Boe*;

178.     Soto, Diego Armando, *Ladinsky* Counsel;

179.     Southeast Law Institute, Non-Party Movant in *Boe*;

180.     Southern Poverty Law Center;

181.     State of Alaska, Amicus in *Boe*;

182.     State of Arizona, Amicus in *Boe*;

183.     State of Arkansas, Amicus in *Boe*;

184.     State of Georgia, Amicus in *Boe*;

185.     State of Indiana, Amicus in *Boe*;

186.     State of Louisiana, Amicus in *Boe*;

187.     State of Mississippi, Amicus in *Boe*;

188.     State of Missouri, Amicus in *Boe*;

189.     State of Montana, Amicus in *Boe*;

190.     State of Nebraska, Amicus in *Boe*;

191.     State of Oklahoma, Amicus in *Boe*;

192.     State of South Carolina, Amicus in *Boe*;

193.     State of Texas, Amicus in *Boe*;

194.     State of Utah, Amicus in *Boe*;

195.     State of West Virginia, Amicus in *Boe*;

196.     Stone, Jessica L., *Ladinsky* Counsel;

197.     Strangio, Chase, *Walker* Counsel;

198.     Susan B. Anthony Pro-Life America, Amicus in *Boe*;

199.     Swaminathan, Sruti J., *Walker* Counsel;

200.     Tarbox, James H., Defendant in *Boe*;

201.     Tea Party Patriots Action, Inc., Amicus in *Boe*;

202.     Tea Party Patriots Foundation, Inc., Amicus in *Boe*;

203.     Tennessee Eagle Forum, Amicus in *Boe*;

204.     Terenzi, Elizabeth N., Bainbridge Mims Rogers & Smith LLP, Counsel for *Ladinsky* Counsel;

205.     Texas Public Policy Foundation, Amicus in *Boe*;

206.     Terry, Abigail Hoverman, *Ladinsky* Counsel;

207.     The Buckeye Institute, Amicus in *Boe*;

208.     The Commonwealth Foundation for Public Policy Alternative, Amicus in *Boe*;

209.     The Endocrine Society, Amicus in *Boe*;

210.     The Family Action Council of Tennessee, Inc., Amicus in *Boe*;

211.    The Foundation for Governmental Accountability, Amicus in *Boe*;

212.    The Liberty Justice Center, Amicus in *Boe*;

213.    The National Right to Work Committee, Amicus in *Boe*;

214.    The Religious RoundTable, Inc., Amicus in *Boe*;

215.    Thompson, David, defense counsel in *Boe*;

216.    Transgender Law Center;

217.    Ugai, John Michael, Farella Braun & Martel LLP, Counsel for *Ladinsky* Counsel;

218.    Unikowsky, Adam Granich, Jenner & Block, LLP, Counsel for *Ladinsky* Counsel;

219.    United States of America, Intervenor-Plaintiff in *Boe*;

220.    Vague, Amie Adelia, *Ladinsky* Counsel;

221.    Vance, Robert Smith, III, of Dominick Feld Hyde, P.C., Counsel for James Esseks, Carl Charles, and LaTisha Faulks;

222.    Ventire, Jessica, Defendant in *Boe*;

223.    Veroff, Julie Michelle, *Walker* Counsel;

224.    Verrilli, Donald B., Jr., of Munger Tolles & Olson LLP, Counsel for Petitioners;

225.    Veta, D. Jean, Covington & Burlin, LLP, counsel for Amicus in *Boe*;

226.    Von Spakovsky, Hans, Amicus in *Boe*;

227.    Wadsworth, Tim R., Amicus in *Boe*;

228.    Waggoner, J.T., Amicus in *Boe*;

229.    Warbelow, Sarah, *Ladinsky* Counsel;

230.    Watkins, William Keith, U.S. Judge for the Middle District of Alabama;

231.    Weaver, Cynthia, *Ladinsky* Counsel;

232.    Welborn, Kaitlin, *Walker* Counsel;

233.    Wheeler, Jennifer Hanson, of Bainbridge Mims Rogers & Smith, LLP, Counsel for *Ladinsky* Counsel;

234.    Wilkerson, Mark D., Wilkerson & Bryan, P.C., counsel for Amicus in *Boe*;

235.    Wilson, Thomas, defense counsel in *Boe*;

236.    World Professional Association for Transgender Health, Amicus in *Boe*;

Date: May 20, 2024

Respectfully Submitted,

/s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, D.C. 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com

**INTRODUCTION**

This Petition for a Writ of Mandamus and Emergency Stay Motion arises out of extraordinary proceedings that have been taking place for the past two years in Alabama District Court. Petitioners and other attorneys have been subjected to an unprecedented judicial investigation of their conduct as counsel in transgender rights litigation. Ex. F, *Vague* Doc. 70 at 1–2. To date, Petitioners have attempted to defend themselves before the District Court without involving this Court.

On Friday, May 17, 2024 at 4:17 p.m. Central Time, Judge Liles Burke, who is presiding over the investigation, issued the order attached as Exhibit A ("Show Cause Order"), requiring Petitioners to provide Judge Burke with their privileged communications with their counsel in the investigation ("the Q&A Document") by Monday, May 20, 2024 at 5:00 pm Central Time—one business day later—or face monetary sanctions and "***remand . . . to the custody of the U.S. Marshals Service***." Ex. A at 17 (emphasis added). Judge Burke issued the Show Cause Order without any notice. Indeed, the Q&A Document had not been discussed in the proceedings for over a year-and-a-half. Even more to the point, the Show Cause Order was based on the manifestly erroneous premise that the three-judge panel previously presiding over the investigation had ordered the privileged Q&A document produced. The opposite is true: in July 2022, the three-judge panel made clear that it was not requiring Petitioners to produce attorney-client communications, *see Vague*, Doc.

1

No. 41 at 4, and in November 2022, the three-judge panel confirmed in open court that "*we certainly understand we've not made you provide us documents*, *the Q and A sheet*." Ex. B at 5:5-6 (November 3, 2022 Transcript in *In re Vague*) (emphasis added).

The Show Cause Order also concluded, *sua sponte* and without any briefing from the parties, that there was a *prima facie* case for application of the crime-fraud exception to Petitioners' claim of attorney-client privilege, Ex. A at 13—an exception that had never before been invoked against Petitioners in the investigation. The Show Cause Order accuses Petitioners and their counsel of perpetrating a fraud on the Court through their response to the investigation, absent evidence any conduct remotely approaching fraud and absent any chance to defend themselves before being forced to produce their privileged communications, on penalty of remand into the custody of the U.S. Marshals.

Petitioners promptly assessed the Show Cause Order and by the evening of Saturday, May 18, 2024, Petitioner Hartnett filed a response and emergency motion with the District Court, attached hereto as Exhibit C, which the other Petitioners subsequently joined. That filing (1) explained that the three-judge panel had expressly ***not*** required production of the privileged Q&A Document and thus that Petitioners had violated no court order; and (2) requested a telephonic conference with the District Court as early as practicable on Monday, May 20 and a stay of the

5:00 p.m. May 20 production deadline, to address these issues in an orderly fashion. *See* Ex. C. It also explained the prejudice that Petitioners would face from Judge Burke viewing their privileged communications to determine if the crime-fraud exception applied, given that Judge Burke is the factfinder in the investigation and cannot "unsee" material he reviews. *See id.*

As of the filing of this Mandamus Petition and Emergency Stay Motion, the District Court has set a telephonic conference for 2:30 PM Eastern Time today but has not issued a stay of his deadline as requested. If the District Court issues a stay or reconsiders its ruling, Petitioners will immediately inform this Court. But if the District Court does not take any such action, Petitioners respectfully request that this Court grant relief by ***5:30 p.m. Eastern Time today, May 20*** (i.e., 30 minutes before Petitioners must produce the Q&A Document). Absent such relief, Petitioners will be required to produce their privileged communications to Judge Burke—the factfinder in their investigation—or face monetary sanctions and remand into the custody of the U.S. Marshals in Montgomery, Alabama on Thursday, May 23. Ex. A at 17.

Relief from this Court is urgently needed—either an order granting the Mandamus Petition outright and relieving Petitioners from compliance with the Show Cause Order, or an order staying the Show Cause Order pending this Court's consideration of the Petition. Petitioners are members in good standing of their bars

with unblemished credentials who have been subject to a process for the last two years that they believe to be fundamentally unfair. Lacking any basis to sanction Petitioners for their conduct in the underlying litigation, the District Court has now suddenly levied baseless allegations of fraud, as well as threats to jail Petitioners if they do not turn over their privileged communications on one day's notice with no opportunity to be heard. That is an abuse of the judicial power that this Court should not countenance.

## BACKGROUND

### I. Petitioners and Other Counsel Challenge Alabama's Ban on Transgender Healthcare for Minors in April 2022.

Petitioners are five attorneys from across the country: James D. Esseks of the ACLU; Carl Charles, formerly of Lambda Legal and currently with the U.S. Department of Justice; LaTisha Faulks of the ACLU of Alabama; Milo Inglehart of the Transgender Law Center; and Kathleen Hartnett of Cooley LLP. *See* Ex. F, *Vague* Doc. 70 at 5. Petitioners were part of a 21-attorney co-counsel team that filed a constitutional challenge on April 11, 2022 in the Middle District of Alabama to a newly enacted Alabama law that categorically bans transgender minors from receiving medical care to affirm their gender identity. *See Walker v. Marshall*, No. 2:22-cv-00167 (M.D. Ala.).

Relevant to the investigation that ensued, *Walker* counsel marked the "related case" box on the civil cover sheet accompanying their complaint to denote another

transgender rights case that recently had been adjudicated in the Middle District and was on appeal.[1] *See* Ex. F, *Vague* Doc. 70 at 6. Also relevant to the ensuing investigation, in the early evening of Friday, April 15, 2022—after *Walker* was transferred to Judge Burke of the Northern District of Alabama and joined with another constitutional challenge brought by a separate, competing group of plaintiffs and attorneys,[2] and after Judge Burke issued an order on Friday afternoon announcing an in-person status conference in Huntsville on the Monday morning after Easter weekend—*Walker* counsel voluntarily dismissed their case without prejudice. *See* Ex. F, *Vague* Doc. 70 at 7–8. They had an "unconditional right" to do so. *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990).

Counsel for *Ladinsky*—the competing case—also voluntarily dismissed their case on the evening of Friday, April 15, 2022. *See* Ex. F, *Vague* Doc. 70 at 8. The two teams made their decisions to dismiss independently, but coordinated the timing of the dismissals as a matter of professional courtesy. Ex. G, *Boe* Doc. 521 at 22–23. The two groups of counsel—who initially had hoped to litigate separately and who had a history of difficulties working together—also agreed to hold discussions to see if they could join forces in a single suit going forward. Ex. G, *Boe* Doc. 521

---

[1] *Corbitt v. Taylor*, 513 F. Supp. 3d 1309 (M.D. Ala. 2021), *appeal pending* No. 21-10486 (11th Cir.).

[2] This matter was *Ladinsky v. Ivey*, No. 5:2022-cv-00447 (N.D. Ala.), with a co-counsel team comprising approximately 18 attorneys.

at 15, 23.  That did not happen, however, as the groups determined they could not work together. *Id.* Thus, *Walker* counsel stepped back and did not pursue any further challenge to the Alabama law, whereas *Ladinsky* counsel prepared a new suit challenging the law. *Id.*

After the April 15, 2022 dismissals, *Ladinsky* counsel was quoted in local news outlets as saying that they planned to institute a new action challenging the law. *See* Ex. F, *Vague* Doc. 70 at 8-9.  These press statements apparently caught the notice of Judge Burke, who, on Monday, April 18, 2022 issued an order directing the Clerk of Court to close *Walker*, and mistakenly attributed to *Walker* counsel the press statements made by *Ladinsky* counsel.  *See* Order, *Walker v. Marshall*, Case No. 5:22-cv-480-LCB (N.D. Ala.), Doc.  No. 24 ("Plaintiffs' counsel is now telling the media that they 'plan to refile immediately[.]'").  Judge Burke further wrote that "Plaintiffs' course of conduct could give the appearance of judge shopping"; he pledged to "closely monitor how this case proceeds," and he directed the Clerk of Court to serve a copy of the order on the Chief Judges and Clerks of Court for each district court in Alabama.  *Id.* at 3-4.

On April 19, 2022, a new group of plaintiffs, represented by *Ladinsky* counsel, filed suit challenging the law in the Middle District of Alabama.  *Eknes-Tucker v. Marshall*, No. 2:22-cv-00184-LCB-SRW (M.D. Ala.).  *Eknes-Tucker* was assigned to Judge R. Austin Huffaker Jr., who, on April 20, 2022, reassigned the case to Judge

Burke. *See* Ex. F, *Vague* Doc. 70 at 9-10. That case, now entitled *Boe v. Marshall*,

remains before Judge Burke.

## II. The Panel Initiates an Investigation in May 2022 and Holds Hearings, But Does Not Require Production of Privileged Communications Between Counsel and Their Lawyers, Including the Q&A Document.

On May 10, 2022, in light of Judge Burke's April 18, 2022 Order, a *sui generis*

three-judge panel (the "Panel") was constituted by the Chief Judges of the Alabama

Districts to inquire into the conduct of the *Walker* and *Ladinsky* counsel. Order, *In*

*re Amie Adelia Vague eat al.*, No. 2:22-mc-03977-WKW (M.D. Ala.), Doc. No. 1.[3]

Referencing Judge Burke's April 18 order in *Walker*, the Panel invoked the courts'

"inherent authority to address lawyer conduct that abuses the judicial process," and

ordered the nearly 40 attorneys representing the *Walker*, *Ladinsky*, and *Eknes-Tucker*

plaintiffs to appear in person 10 days later at a May 20, 2022 hearing "to allow the

panel to inquire about the issues raised by counsel's actions." *Id.* That Order did

not provide notice that testimony would be taken from any counsel on May 20, or

otherwise explain the purpose of the May 20 hearing.

After the entry of the May 10 order, members of the *Walker* team promptly

retained Barry Ragsdale as investigation counsel. *See* Ex. E. They then, among other

---

[3] The Panel was comprised of: Judge W. Keith Watkins of the Middle District of Alabama (designated by Chief Judge Marks), Judge R. David Proctor of the Northern District of Alabama (designated by Chief Judge L. Scott Coogler), and Judge Jeffrey U. Beaverstock of the Southern District of Alabama.

things, prepared materials, including a "Q&A Document," at the direction of Mr. Ragsdale, to assist him with understanding the facts and history of the *Walker* case and to prepare him for questions that might be asked at the May 20 hearing. *See* Ex. C at 3-4. Because Mr. Ragsdale had been retained just days before the May 20 hearing, he had limited time to learn all the relevant information and ensure that his representations to the Court were informed and accurate; the Q&A Document was part of that preparation. *Id.* Notably, based on the content of the May 10 order, *Walker* Counsel and Mr. Ragsdale believed that the May 20 hearing would involve only a presentation by Mr. Ragsdale, and perhaps comments by certain senior lawyers from the *Walker* and *Ladinsky* teams—not testimony from the dozens of lawyers across the *Walker* and *Ladinsky* counsel teams. Ex. C at 4. In fact, Mr. Ragsdale stated on the record at the May 20 hearing that he did not expect any of the Petitioners to be called to testify. *Id.* Thus, *Walker* Counsel were not preparing to testify on May 20; they were preparing their lawyer to represent them at a hearing.

The Panel held the hearing on May 20 pursuant to a novel process that evolved in real-time as the hearing progressed.[4] Among other things, despite a lack of notice or expectation of testimony, the Panel required junior lawyers from both the

---

[4] Petitioners have detailed the Panel's due process violations in filings below. These violations included denying Petitioners and the other subjects of the investigation the ability to be present during the majority of the proceedings. *See Boe*, Doc. No. 493 (Esseks, Charles, Faulks brief); *Boe*, Doc. No. 503 (Hartnett brief).

*Ladinsky* and *Walker* teams to provide sworn testimony in a separate room to Supreme Court of Alabama Retired Justice Harwood, whom the Panel described as a special master. *See* Ex. F, *Vague* Doc. 70 at 12. The junior lawyers were denied counsel by the Panel during that questioning. *See* Ex. H, Excerpt from May 20, 2022 Hrg. Trans. at 78–81. During this uncounseled interrogation, every junior *Walker* lawyer was asked by Judge Harwood whether their testimony had been coached, and every junior *Walker* lawyer confirmed that they had ***not*** been coached. *See* Exhibit D (excerpts of junior *Walker* counsel's testimony before Judge Harwood). The Panel also began taking sworn testimony on May 20, 2022 from the senior *Walker* counsel, with all counsel other than the testifying counsel excluded during each counsel's testimony.

Following that hearing, the Panel issued a sweeping sequestration and gag order, preventing *Ladinsky* and *Walker* counsel from speaking to each other and/or with anyone other than their attorneys about the matter, and also denying *Ladinsky* and *Walker* counsel access to information about the questions asked in the inquiry and transcripts of the inquiry.[5] The Panel also rejected the request of *Ladinsky* and

---

[5] The Panel described this as "a modified version of Federal Rule of Evidence 615." *Vague*, Doc. No. 22 at 4 n.3. But that Rule expressly "does not authorize excluding a party who is a natural person." Fed. R. Evid. 615(a). The Panel's procedure "modified" the Rule by disregarding its text and violating what its Commentary recognizes as "the right of a natural-person party to be present." Fed. R. Evid. 615 advisory committee's note on proposed rules.

*Walker* counsel to dismiss the inquiry in light of the unqualified dismissal right in Federal Rule of Civil Procedure 41.  *Vague*, Doc.  Nos. 32, 41.  Instead, by order dated July 8, 2022, the Panel set additional evidentiary hearings for August 3 and 4, 2022, requiring 21 members of the *Walker* and *Ladinsky* counsel to appear in person to answer questions under oath and subject to sequestration orders.  *Vague*, Doc. No. 22.  The Panel also required each of the 21 attorneys to file a declaration *in camera* before the August 2022 hearings addressing eight broad topics.  *See id.* Among the topics was Topic 7: "[a]ny knowledge you have that relates to (1) preparation for the hearing in this matter (including circulation of any Q&A document), and (2) the questions expected to be asked or that were actually asked by the court at the May 20, 2022 hearing."  *Id.* at 3.  The order also required Milo Inglehart, a junior attorney on the *Walker* team, to disclose to the Panel "a copy of the Q&A sheet."  *Id.* at 2 n.1.

On July 21, 2022, in advance of the declaration deadline, *Walker* Counsel filed a motion for a protective order with the Panel to guard against the disclosure of any information related to their preparation with counsel for the May 20 hearing that is protected by the attorney-client privilege and the attorney work product doctrine, including the "Q&A Document." *Vague*, Doc.  No. 34.  On July 25, 2022, the Panel issued an order denying *Walker* Counsel's motion for a protective order, but also "clarifie[d]" that "the Panel is not seeking the disclosure of privileged

*communications.*" *Vague*, Doc. No. 41. Based on this order, *Walker* Counsel understood that they were no longer required to disclose the Q&A Document—a privileged communication—and so advised the Panel in a submission on July 27. *Vague*, Doc. No. 42. The submission also made clear that "*Walker* Counsel continue to maintain their objection to the forced disclosure of attorney work product, whether *in camera* or otherwise," and that the declarants would not disclose any information protected by the work product doctrine "that relates to the preparation for the May 20, 2022 hearing." *Id.*

Mr. Inglehart filed his declaration *in camera* on July 29, and the Panel did not pursue the Q&A document further. On August 2, 2022, the Panel *sua sponte* excused Mr. Inglehart—the only individual ordered to produce the Q&A Document—from appearing at the August 3, 2022 hearing. *Vague*, Doc. No. 47.

The other remaining *Walker* and *Ladinsky* Counsel also filed declarations prior to the August hearings. Each *Walker* Counsel addressed Topic 7 by explaining their preparations for the May 2022 hearing, with all making clear that their preparations with Mr. Ragsdale (including the Q&A Document) were appropriate attorney-client communications and attorney work product. *See* Exhibit E (excerpts from *Walker* Counsel declarations concerning Topic 7). All *Walker* Counsel also confirmed in their declarations their compliance with the Panel's sequestration orders. *See id.*

The August 2022 hearings proceeded, as did additional hearings scheduled by the Panel for November 2022, until all remaining counsel had presented sworn testimony to the Panel. Notably, the Panel expressly confirmed during the November 2022 hearings that it had not required production of attorney-client communications, including the privileged Q&A Document, stating that "*we certainly understand we've not made you provide us documents*" including "*the Q and A sheet*." Ex. B at 5:5-6.

At the conclusion of its last hearing in November 2022, the Panel directed the subject attorneys to file written submissions upon the Panel's provision of transcripts. *Vague*, Doc. No. 74 at 86–87. The transcripts were never provided by the Panel, however, and thus no briefs were submitted despite the Panel's assurance that an opportunity for briefing would be provided.

### III. The Panel Issues a Report and Transfers the Matter to Judge Burke, Who Issues Show Cause Orders and Suddenly Requires Production of the Q&A Document on One Day's Notice Subject to Threat of Jailing.

The Panel took no action until nearly a year later, on October 3, 2023, when it issued a document titled "Final Report of Inquiry." *Vague*, Doc. No. 70 ("Final Report"). The Final Report purported to find "both individual and collective" misconduct on the part of eleven of the attorneys, including Petitioners, *id.* at 51, although it provided few if any individualized findings. The Final Report also purported to close the inquiry.

Several of the eleven attorneys promptly appealed the Final Report to this Court. *See Vague*, Doc. Nos. 86, 87, 92. Thereafter, the Panel entered an order reopening the case, observing that the Report is not a "final decision" and that it "requires further proceedings." *Vague*, Doc. No. 99. The Panel transferred the investigation to Judge Burke for those "further proceedings" including, but not limited to, "accepting, rejecting, or modifying in whole or in part the Panel's findings and making additional findings of fact as necessary." *Id.* The appeals of the Final Report were then dismissed. *Vague*, Doc. Nos. 101-103. Judge Burke now presides over the investigation in the context of the underlying merits case, *Boe v. Marshall*, despite the Panel's prior assurance that its investigation was "not related to any of the dockets . . . we've received this inquiry from"—*i.e.*, the underlying merits case. *Vague*, Doc. 75 at 16:4–5.

On February 21, 2024, Judge Burke issued a show cause order to the eleven remaining attorneys, threatening to sanction them based on the Final Report. *Boe*, Doc. No. 406. Without advance notice, Judge Burke unsealed the proceedings in mid-March, *Boe*, Doc. No. 459, despite the Panel's prior assurance to the investigation subjects that they would "have a chance to review . . . and ask to redact" privileged information in the transcripts, *Vague*, Doc. 75 at 83:3–4, and despite the fact that the subject attorneys had not yet had the opportunity to respond to the Panel Report or the show cause order. *See Boe*, Doc. No. 459. .

13

The subject attorneys lodged objections to the order threatening sanctions based on the Final Report—including but not limited to the order's vague and collective nature. Judge Burke thereafter issued separate show-cause orders to each of the eleven attorneys on May 1, 2024. *See, e.g.*, *Boe*, Doc. No. 479. The separate show-cause orders largely had the same defects as the prior collective one, however, as the District Court simply inserted individuals' names into the Panel's collective findings of misconduct. Nonetheless, the eleven subjects responded to those orders with hundreds of pages of submissions by the deadline of May 13, 2024. *See, e.g.*, *Boe*, Doc. No. 521. The subject attorneys then turned to preparing for a hearing that the District Court had scheduled for May 23, 2024 to discuss the procedure for the individual show cause hearings, which the Court had scheduled to take place at the end of June 2024. *See, e.g.*, *Boe*, Doc. No. 479 at 16.

Then, out of the blue at 4:17 p.m. Friday, May 17, 2024, Judge Burke issued the Show Cause Order that is the subject of the present stay motion. *See* Ex. A. The Order requires Petitioners to produce the Q&A Document—an attorney-client communication that they prepared at the direction of and with the input of their counsel, Mr. Ragsdale—by Monday, May 20, 2024 at 5:00 p.m. Central Time or face monetary sanctions and jailing by the U.S. Marshals at the upcoming May 23, 2024 hearing. Ex. A at 17.

The Show Cause Order has a number of very serious flaws. Quite notably in

light of the Order's sudden, *sua sponte* nature and the extremely short production deadline, the topic of the Q&A Document had not come up in the investigation for over a year-and-a-half—since the Panel confirmed in November 2022 that it had ***not required*** the investigation subjects to produce any attorney-client communications, and thus had ***not required*** production of "***the Q and A sheet***." Ex. B at 5:5-6 (emphasis added). Yet the Order claimed, incorrectly, that Petitioners have been flouting an order by the Panel to produce the Q&A Document for nearly two years. *See* Ex. A at 4, 6, 17. The Order also denied Petitioners the opportunity to respond to the forced waiver of privilege, stating that "the Court will not tolerate any further contumacious refusals to disclose court-ordered materials, which must be produced by the deadline." Ex. A at 17. Finally, the Order appears to reach the unfounded conclusion that there is a prima facie case that Petitioners' conduct has triggered the crime-fraud exception to attorney-client privilege—*i.e.*, that Petitioners and their counsel have been involved in a fraud on the Court in their response to the investigation. *Id.* at 13. This is an extremely grave allegation to which Petitioners have been given no chance to respond. Ex. C.

Petitioners have sought relief from the District Court. The very next day, on the evening of Saturday, May 18, 2024, Petitioner Hartnett filed the attached response and motion for telephonic conference and stay. *See* Ex. A. The other Petitioners joined in this motion and also asked for dismissal of the Show Cause

Order as to Petitioner Inglehart, who has been dismissed from this inquiry since August 2022. As of the filing of this Motion—notice of which was given to the District Court—the District Court has scheduled a telephonic conference for 2:30 PM Eastern Time today, but has not issued a stay, or otherwise indicated that the 5:00 p.m. Central Time May 20 deadline is anything but firm.

## ARGUMENT

The District Court's order is a grave abuse of the judicial power. That order requires Petitioners to produce attorney-client communications with their counsel for *in camera* review—on one day's notice; on penalty of monetary sanctions and jailing of Petitioners; where there has been no showing to trigger the crime-fraud exception to the attorney-client privilege; and, indeed where there has been no opportunity for Petitioners to even brief the crime-fraud issue before the District Court. The Court should grant a writ of mandamus to relieve Petitioners from the Show Cause Order. Alternatively, the Court should order a stay of the Show Cause Order until the Court resolves the Mandamus Petition.

## I. THE COURT SHOULD GRANT THE MANDAMUS PETITION AND RELIEVE PETITIONERS FROM THE SHOW CAUSE ORDER.

This Court has authority to issue a writ of mandamus pursuant to the All Writs Act. 28 U.S.C. § 1651(a); *see* Fed. R. App. P. 21. For the writ to issue, three conditions must be satisfied: Petitioners must show a "clear and indisputable" right to relief; they must show that they have "no other adequate means to attain the relief"

desired; and "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (citations omitted). "These hurdles, however demanding, are not insuperable." *Id.* Here, all three criteria are met. Absent relief from the Show Cause Order, Petitioners will be forced to turn over their attorney-client privileged communications to the factfinder in an investigation against them—a bell that cannot be unrung. Such novel and injurious privilege rulings are a quintessential ground for mandamus relief.

### A. Petitioners Have a Clear and Indisputable Right to Relief.

Where a district court abuses its discretion in ordering the production of privileged material, the party asserting the privilege has a clear and indisputable right to a writ of mandamus. *See In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *FTC v. Nat'l Urological Grp., Inc.*, 785 F.3d 477, 481 (11th Cir. 2015).

### 1. The Q&A Document Is Protected By Attorney-Client Privilege and the Work Product Doctrine.

Petitioners' communications are protected by the attorney-client privilege and work product doctrine in the District Court's investigation of their conduct. *See* Fed. R. Evid. 1101(c) (providing that "[t]he rules on privilege apply to *all* stages of a case

or proceeding" (emphasis added)). The protection of the privilege is not limited to traditional adversary proceedings. Where, as here, a judicial panel investigates attorneys for claimed misconduct, those parties are entitled to engage counsel and consult with counsel in confidence. *See* Fed. R. Evid. 1101(c); Fed. R. Evid. 1101(d) (confirming that the evidentiary rules regarding privilege apply to miscellaneous proceedings); Northern District of Alabama Local Rule 83.1(h)(1)(C) (recognizing that privileges may be asserted in an attorney disciplinary proceeding); Middle District of Alabama Local Rule 83.1(j)(3) (same).

Communications between Petitioners and the attorneys representing them in the investigation are at the very core of what the attorney-client privilege protects: "disclosures made by a client to his attorney, in confidence, for the purpose of securing legal advice or assistance." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020). The privilege likewise protects communications by attorneys to their clients. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). And in a case like this one that involves joint representation, the privilege protects communications between co-clients and their common attorneys. *See, e.g.*, *Teleglobe Commc'ns Corp. v. BCE, Inc.*, 493 F.3d 345, 363 (3d Cir. 2007). The very point of the privilege is "to encourage full and frank communication between attorneys and their clients," recognizing "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully

informed by the client." *Upjohn*, 449 U.S. at 389; *see also United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (similar).

The Q&A Document is classic attorney-client privileged material. Mr. Ragsdale, representing Petitioners in the District Court's investigation, directed his clients to prepare a list of potential questions the Panel might ask at the May 20, 2022 hearing, as well as proposed answers to those questions, so that he could be prepared for the hearing. Senior *Walker* Counsel did so, and discussed the document with Mr. Ragsdale for the purpose of obtaining his legal advice in preparation for that hearing. These "disclosures made by . . . client[s] to [their] attorney, in confidence, for the purpose of securing legal advice or assistance," are at the very heart of what the attorney-client privilege protects. *Knox*, 957 F.3d at 1248.

The attorney work-product doctrine also protects the Q&A Document from compelled disclosure. That doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), covers "'documents . . . prepared in anticipation of litigation or for trial' by or for a party or for a party's representative," *Covey v. Colonial Pipeline Co.*, 336 F.R.D. 514, 519 (N.D. Ala. 2020), including documents reflecting witness statements or other communications, *see Hickman v. Taylor*, 329 U.S. 495, 511–12 (1947). While courts may compel production of fact work product upon a showing of substantial need and an inability to secure the material through other means, opinion work product—that, is "material that reflects an attorney's mental

impressions, conclusions, opinion, or legal theories"—"enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *Hickman*, 329 U.S. at 510 ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").

The Q&A Document contains both fact work product and opinion work product, and is therefore protected from disclosure. The document was prepared at the direction of and in consultation with Petitioners' attorneys, and reflects their input. It was prepared in anticipation of the May 20, 2022 hearing, which the Panel held as part of an active and ongoing litigation inquiry, as well as in anticipation of any litigation arising from that inquiry.

### 2.      The District Court Abused Its Discretion In Issuing the Show Cause Order Requiring Production of the Q&A Document.

The District Court abused its discretion in ordering Petitioners to disclose the Q&A Document (an attorney-client communication) to the Court (the factfinder in the misconduct investigation) for *in camera* review—particularly on one business day's notice and without any opportunity for Petitioners to be heard on whether the document should be produced. Most fundamentally, Judge Burke's Show Cause Order proceeds from the manifestly mistaken premise that the Panel had ordered the production of the Q&A Document and that Petitioners were contumaciously refusing

to comply. *See* Ex. A. at 4, 6, 17. Had Petitioners been given adequate notice and an opportunity to be heard they could have pointed out that the opposite is true: the Panel expressly held that Petitioners did *not* have to produce attorney-client communications generally, *see Vague*, Doc. No. 41 at 4, including the Q&A Document specifically. *See* Ex. B. at 5:5-6. The Show Cause Order omits this critical—indeed, dispositive—fact.

This leaves as the only basis for Judge Burke's order his *sua sponte* and unfounded allegation that the crime-fraud exception to the attorney-client privilege applies—*i.e.*, that Petitioners and their counsel have been engaged in a fraud on the Court and that "the Q & A document was produced in furtherance of that conduct." Ex. A at 13. This is a novel and grave allegation against Petitioners—one never made by the Panel, and one to which Judge Burke gave Petitioners no chance to respond before ordering production of their privileged material and unjustifiably damaging their professional reputations in the process.[6]

A federal court may conduct an *in camera* review of a document to determine whether an exception to attorney-client privilege exists only where there has been a

---

[6] Notably, the Panel appeared to believe that invocation of this exception was unavailable in the investigation due to the Panel's insistence that the investigation is a non-adversarial proceeding. *See Vague*, Doc. No. 41 at 3 (stating that "[t]here is no opposing party to raise potential exceptions to privilege or protection: for example, waiver or the crime-fraud exception").

threshold showing of "a factual basis adequate to support a good faith belief by a reasonable person" that an exception to the attorney-client privilege applies. *United States v. Zolin*, 491 U.S. 554, 572-73 (1989). And, for the crime-fraud exception to apply, "[f]irst, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice," and "[s]econd, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987). In other words, for this exception to apply here, Petitioners must have been engaged in criminal or fraudulent activity in responding to the District Court's investigation and must have sought Mr. Ragsdale's assistance to further those unlawful acts. The record here in no way, shape, or form supports such a showing.

In a cursory paragraph, Judge Burke offered two bases for the claimed applicability of the exception—neither of which comes close to establishing a crime or a fraud. First, Judge Burke cites his *own show cause orders* as a claimed basis for the existence of a fraud. *See* Ex. A at 13 ("each of them has been issued a show-cause order"). But an *accusation*—here the Court's show-cause orders against Petitioners—is not *evidence* of a crime or a fraud.

Second, Judge Burke cites loose language from one footnote in the Final Report that "*Walker* counsel's candor on the whole is concerning." *Id.* (quoting *Vague*, Doc. No. 339 at 18 n.3). However, that footnote does not support such an assertion: it cites to a single answer by one Petitioner to a hypothetical question that the Panel deemed unsatisfactory. *See Vague*, Doc. No. 339 at 18 n.3. And it ignores that the Panel elsewhere praised *Walker* Counsel's candor. For example, the Panel repeatedly praised Petitioner Hartnett's testimony, making statements such as: "One of the things I was impressed with your declaration is its clarity, its organization, and its candor. So I want to give you that compliment as we stand here." *Boe*, Doc. No. 521 at 3 (quoting Aug. 3, 2022 Hearing). Put simply, neither the Final Report nor anything else in the record before the District Court supports the notion that Petitioners and their counsel in the investigation have been engaged in a fraud on the Court.

The context of the creation of the Q&A Document also belies any notion that the document was nefarious or improper. As explained above—and as no evidence in the record contradicts—the Q&A Document was prepared at Mr. Ragsdale's direction because the May 20, 2022 hearing was scheduled with 10 days' notice, *Walker* Counsel had to quickly find counsel, and they then had to quickly get Mr. Ragsdale up to speed for the May 20 hearing. *See* Ex. C at 3. Moreover, Petitioners and Mr. Ragsdale mistakenly believed that the May 20 hearing would involve only

a presentation by Mr. Ragsdale, and perhaps comments by certain senior lawyers—not sworn testimony. *See id.* at 3-4. That neither Petitioners nor their counsel had any expectation that Petitioners would be testifying on May 20 underscores that the Q&A Document was not a tool to synthesize testimony but rather a means to educate Mr. Ragsdale and prepare him for questioning. *See id.* at 4.

Further belying the District Court's invocation of the crime-fraud exception is that ***all*** of the junior *Walker* Counsel who testified on May 20, 2022—while deprived of the presence of counsel—were asked by Justice Harwood whether their testimony had been coached and they all said no. *See* Ex. D. Likewise, ***all*** of the *Walker* Counsel who submitted declarations in July 2022 testified to their unobjectionable preparations for the May 20 hearing and their compliance with the Panel's sequestration order thereafter. *See* Ex. E. Accordingly, there is simply no basis in the record for the District Court's invocation of the crime-fraud exception to the attorney-client privilege against Petitioners.

The district court's order is indefensible not only because of its procedural irregularities but also because the crime-fraud exception has such a limited scope—given the importance of protecting the attorney-client privilege. *See, e.g.*, *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012); *Unigene Lab'ys v. Apotex*, 655 F.3d 1352, 1359 (Fed. Cir. 2011). The Show Cause Order relies solely on the "fraud" prong of that exception. But "the extreme remedy of piercing the attorney-client

privilege" under that prong is appropriate only on a showing of *common-law fraud*. *Unigene Lab'ys.*, 655 F.3d at 1358-59 (Fed. Cir. 2011); *but see In re Abbott Laboratories*, 96 F.4th 371, 378 n.6 (3d Cir. 2024). That requires, at a minimum, a showing of "a representation of material fact" that is "fals[e]" and "justifiable reliance upon the misrepresentation by the party deceived." *Unigene Lab'ys*, 655 F.3d at 1359 (quoting *In re Spalding Sports*, 203 F.3d 800, 807 (Fed. Cir. 2000)). Courts take a similar approach to "fraud on the court," finding that such a fraud exists only where there is deception, directed at the court, based on "egregious misconduct" that actually affects the integrity of the proceedings – for instance, "bribery of a judge or jury or fabrication of evidence by counsel." *Herring v. United States*, 424 F.3d 384, 386-87, 390 (3d Cir. 2005); *Apotex v. Merck & Co.*, 507 F.3d 1357, 1360-61 (Fed. Cir. 2007); *Zurich N. Am. v. Matrix Serv.*, 426 F.3d 1281, 1291 (10th Cir. 2005). his case involves no such "fraud," and the Show Cause Order provides no basis for concluding otherwise. Finally, even a threshold *in camera* review of the Q&A Document would be manifestly inappropriate. It is not plausible to think that Judge Burke—the factfinder in these proceedings—could exclude all consideration of the Q&A Document from his thought processes once he reviews the document. To the contrary, review by the District Court would irretrievably compromise the possibility of a fair and impartial judgment in the matter. That is why Petitioners asked Judge Burke to stay his order and consider other options—

including a special master.  *See* Ex. C.

**B.    Petitioners Have No Other Adequate Means of Relief.**

Apart from a writ of mandamus (or this Court's stay of the Show Cause Order pending resolution of the Petition), Petitioners have no other adequate means of relief.  Where, as here, a writ of mandamus is sought to prevent disclosure of information subject to a privilege, this Court has held that no other adequate means of relief is available because if the Court "do[es] not grant the petition, the information at issue will be disclosed and the harm . . . will have been done." *In re Sec'y, Fla. Dep't of Corr.*, No. 20-10650-J, 2020 WL 1933170, at *1 (11th Cir. Mar. 30, 2020) (hereinafter, "Florida Department of Corrections").; *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.) ("[P]ost-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents. . . .  For those reasons, the first condition for mandamus—no other adequate means to obtain relief—will often be satisfied in attorney-client privilege cases."); *In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005).

Where a judge is the sole fact-finder, the logic of decisions about disclosure to an opposing party apply with full force:  even if the judge ultimately concludes that a disclosed document is privileged, the harm will have already been done.  The present situation is thus a far cry from the usual situation in which the judge sits as

a neutral arbiter between one party who wants to withhold the document and another party who wants to obtain it. In a quasi-inquisitorial proceeding like this one, in which there is no adverse party and the judge who is demanding the document is also the factfinder, *in camera* review results in *all* of the prejudice of disclosure.

Here, as in other cases involving disclosure orders that violate the attorney-client privilege, alternative mechanisms for interlocutory review are not available. The Supreme Court has squarely held that such orders are not appealable under the collateral order doctrine. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009). Resort to 28 U.S.C. § 1292(b) also unavailable, because interlocutory appeal under that statute is appropriate only when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The order at issue here is collateral to, and independent of, the merits of the parties' claims or defenses in this case, and thus does not meet the standard for certification. Thus, this Court has granted mandamus to petitioners who did not seek Section 1292(b) certification, *see Florida Department of Corrections*, 2020 WL 1933170, at *1, as have other Courts of Appeals. *See, e.g.*, *In re Brazile*, 993 F.3d 593, 594 (8th Cir. 2021) ("[A] petitioner need not first seek discretionary interlocutory review under 28 U.S.C. § 1292(b) before mandamus is an appropriate remedy."); *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456, 462 n.5 (3d Cir. 1996) (declining to impose "an inflexible requirement that certification be sought" because "mandamus

might be appropriate in a case not satisfying the section 1292(b) certification standard").

Finally, courts have long held that, for party-litigants like Petitioners here, the possibility of disobeying a court order and then appealing a resulting contempt order is not an adequate means of relief. *See, e.g.*, *In re Clinton*, 973 F.3d 106, 112 (D.C. Cir. 2020); *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 761; *United States v. Hemphill*, 369 F.2d 539, 543 (4th Cir. 1966). Among other things, there is no way to predict whether a district court will issue an appealable criminal contempt order or will instead impose other onerous but non-appealable sanctions.

## C. Mandamus is Appropriate Under the Circumstances

Mandamus is manifestly appropriate under the circumstances presented by this case. The Supreme Court has made clear that mandamus must be available as a safety valve to redress novel and injurious privilege rulings of exactly the kind at issue here. *See Mohawk*, 558 U.S. at 110. And this Court has repeatedly emphasized that:

> Mandamus is often an appropriate method of review of orders compelling discovery. In the context of discovery orders which will compromise a claim of privilege . . . , mandamus has been found appropriate due to the importance of the privilege, the seriousness of the injury if discovery is obtained, and the difficulty of obtaining effective review once the privileged information has been made public.

*In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989) (citation omitted); *see also In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) (same); *Florida Department of*

*Corrections*, 2020 WL 1933170, at *1 ("Although mandamus is an extraordinary remedy, it can be an appropriate remedy for discovery orders which threaten to disclose highly sensitive information.").

Here, as in other cases involving orders requiring disclosure of material claimed to be privileged, a writ of mandamus is the only available means to prevent irreparable harm that will otherwise result from the disclosure of Petitioners' privileged material. That harm would be visited not only upon Petitioners here but also upon other litigants, who would lose the certainty and predictability provided by the attorney-client privilege and work product doctrine. *See Upjohn*, 449 U.S. at 393. A district court ruling that "threatens to upset this predictability . . . merits prompt attention and resolution." *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987).

The Show Cause Order here threatens to introduce even greater uncertainty into the attorney-client relationship than a typical discovery decision, as the investigation is a *sui generis* proceeding based on the District Court's invocation of its "inherent powers" to "address lawyer conduct that abuses the judicial process" and "polic[e] [their] docket[s] through a wide range of appropriate remedies." *Vague*, Doc. No. 1 at 5. Such open-ended assertions of inherent authority raise the specter that other courts could institute similar proceedings in response to other conduct that, in their view, "abuses the judicial process"—and that these courts could then act on their own initiative, as the District Court did here, to compel disclosure

to themselves, for their investigative purposes, of material assertedly protected by the attorney-client privilege and work product doctrine. The risks are all the more concerning given that the present investigation began with Petitioners' voluntary dismissal without prejudice of a complaint—an "unconditional right," *Matthews*, 902 F.2d at 880—and no refiling of any case. The chilling effects of the District Court's investigation—and now the remarkable threat to incarcerate Petitioners if they do not produce their privileged communications—cannot be overstated.

## II. Alternatively, The Court Should Order a Stay of the Show Cause Order Pending Resolution of the Mandamus Petition.

Because the Show Cause Order is patently deficient, the Mandamus Petition should be granted. However, at a minimum, this Court should grant a stay to preserve the status quo. Otherwise, Petitioners will be forced to produce their attorney-client communications to the factfinder in the investigation—which cannot be "unseen" once produced—or be thrown in prison.

This Court will grant emergency relief upon the following showing: "(i) the likelihood the moving party will prevail on the merits; (ii) the prospect of irreparable injury to the moving party if relief is withheld; (iii) the possibility of harm to other parties if relief is granted; and (iv) the public interest." 11th Cir. R. 27-1; *cf. Nken v. Holder*, 556 U.S. 418, 426 (2009). As explained above, Petitioners are very likely to prevail on the merits of their Mandamus Petition. All equitable factors also favor a stay pending resolution of Petitioners' mandamus petition: Judge Burke ordered

Petitioners' privileged communications with their attorneys in the investigation disclosed to him—the factfinder in the investigation—on one day's notice, with no reasonable basis, with no briefing from Petitioners, and overlooking that the Panel already acknowledged that it was not requiring production of the privileged material at issue. Equity strongly points to staying this unfounded order.

Accordingly, if the Mandamus Petition is not granted, a stay of the Show Cause Order should issue prior to 5:30 p.m. Eastern Time on May 20 (*i.e.*, 30 minutes before the compliance deadline).

## CONCLUSION

For the foregoing reasons, this Court should grant the Petition for a Writ of Mandamus by 5:30 p.m. Eastern Time on May 20, 2024. Alternatively, the Court should issue an order staying the Show Cause Order by 5:30 p.m. Eastern Time on May 20, 2024, pending resolution of the Mandamus Petition.

Date: May 20, 2024

Respectfully Submitted,

/s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
Suite 500E
Washington, D.C. 20001
P: (202) 220-1100
F: (202) 220-2300
Donald.Verrilli@mto.com

Barry A. Ragsdale
Robert S. Vance III

DOMINICK FELD HYDE, P.C.
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
P:  (205) 536-8888
bragsdale@dfhlaw.com

W. Neil Eggleston
Byron Pacheco
Eugene F. Assaf
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
P: (202) 202-389-5000
F: (202) 389-5200
Neil.Eggleston@kirkland.com

Brannon J. Buck
Christopher B. Driver
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
P: (205) 521-0036
F: (205) 521-0037
bbuck@badhambuck.com

*Counsel for Petitioners*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the word limit of Fed. R. App. P. 21(d)(1), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,798 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point, Times New Roman.

Date: May 20, 2024                                  Respectfully Submitted,

                                                              s/ Donald B. Verrilli, Jr.
                                                              Donald B. Verrilli, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. All participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I also served via e-mail a copy of this motion on all counsel of record.

Date: May 20, 2024

Respectfully Submitted,

s/ Donald B. Verrilli, Jr.
Donald B. Verrilli, Jr.